24445

The STATE, Respondent v. Jerry Bridwell McWEE, Appellant.

(472 S.E. (2d) 235)

Supreme Court

*Assistant Appellate Defender Robert M. Dudek, of S.C. Office of Appellate Defense, Columbia; and James B. Huff,* North Augusta, *for appellant.*

*Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Norman Mark Rapoport,* Columbia; and *Solicitor Barbara R. Morgan,* Aiken, *for respondent.*

Heard Dec. 5, 1995.

Decided June 10, 1996; Reh. Den. July 12, 1996.

BURNETT, Justice:

Appellant was convicted of murder and armed robbery and received a death sentence. We consider appellant's direct appeal and the sentence review mandated by S.C. Code Ann. § 16-3-25 (1985) and affirm.

## FACTS

Appellant and his accomplice, George Wade Scott (Scott), killed a man working in a rural convenience store, then stole a gun, cigarettes, and money from a cash register. In a statement admitted during the guilt phase of appellant's trial, appellant acknowledged shooting the victim twice, the first time "by accident" and the second time "by mistake."[1] During the penalty phase, it was revealed that appellant and Scott had committed another murder one week after this one, and that appellant had solicited Scott to kill appellant's ex-wife. Scott admitted firing the shots which killed the second victim, but alleged appellant made him do it.

## DISCUSSION

*Notice of Intent to Seek Death Penalty*

Appellant argues the State was precluded from seeking the death penalty in this case because it failed to give thirty days' notice of its intention to do so as required by S.C. Code Ann. § 16-3-26(A) (Supp. 1995). We dis-

---

[1] During the penalty phase, appellant contended Scott held the store gun to appellant's back and made him kill the victim.

agree. The record is clear that for months prior to the State's calling the indictment[2] for trial, appellant's attorneys had actual notice the State was seeking the death penalty. Actual notice is all the statute requires. *State v. Young,* 319 S.C. 33, 459 S.E. (2d) 84 (1995), *cert. denied,* — U.S. —, 116 S.Ct. 718, 133 L.Ed. (2d) 671 (1996).

### Parole Eligibility

Prior to voir dire, appellant's attorneys asked the trial judge whether he would charge the jury during the penalty phase that if it found an aggravating circumstance but recommended a life sentence, appellant would not be eligible for parole until the service of thirty years' imprisonment. The judge initially indicated he would give such a charge. However, at the beginning of the penalty phase, the judge stated he would not give a parole eligibility charge after all.

During his jury charge in the penalty phase, the judge stated that the terms "life imprisonment" and "death penalty" should be given their plain and ordinary meaning, and that no other consideration about the effect of either sentence should enter into the jury's deliberations. Following this charge, the jury deliberated two minutes before returning to the courtroom and asking whether a minimum number of years must be served by a defendant sentenced to life before becoming eligible for parole. The judge then recharged the jury that the terms "life imprisonment" and "death penalty" were to be given their plain and ordinary meaning. Citing *Simmons v. South Carolina,* 512 U.S. —, 114 S.Ct. 2187, 129 L.Ed. (2d) 133 (1994), appellant argues the refusal to charge the jury on his parole eligibility if given a life sentence violated his due process and Eighth Amendment rights. We disagree.

Initially, we note this issue is not preserved for review because at trial, appellant never cited any constitutional basis for his request to give a parole eligibility charge. *State v. Holmes,* 320 S.C. 259, 464 S.E. (2d) 334 (1995); *State v. Williams,* 303 S.C. 410, 401 S.E. (2d) 168 (1991) (issues not raised to and ruled on by the trial court are not preserved

---

[2] Appellant was first indicted in 1992, and written notice was given on that indictment. Appellant challenges the validity of the 1992 indictment. Since appellant was re-indicted in 1993, and the 1993 indictment was the one called for trial, we need not reach the issues related to the lawfulness of the 1992 indictment.

for appeal). In any event, due process would have required a charge on parole eligibility in this case only if appellant's future dangerousness was an issue and only if appellant would have been ineligible for parole upon the imposition of a life sentence. *Simmons v. South Carolina, supra; State v. Tucker,* 319 S.C. 425, 462 S.E. (2d) 263 (1995), *cert. denied,* — U.S. —, 116 S.Ct. 789, 133 L.Ed. (2d) 739 (1996); *State v. Southerland,* 316 S.C. 377, 447 S.E. (2d) 862 (1994), *cert denied,* — U.S. —, 115 S.Ct. 1136, 130 L.Ed. (2d) 1096 (1995), *overruled on other grounds, State v. Chapman,* 317 S.C. 302, 454 S.E. (2d) 317 (1995). Because appellant would not have been ineligible for parole upon the imposition of a life sentence, the judge's refusal to give a parole eligibility charge was not a violation of appellant's due process rights. In addition, the refusal to give a parole eligibility charge in this case was not a violation of appellant's rights under the Eighth Amendment. *See State v. Young, supra.* Further, after carefully reviewing the entire record, we find no evidence the trial judge's initial indication he would give a parole eligibility charge influenced either voir dire, the selection of jurors, or the presentation of evidence during the guilt phase of trial. Consequently, we do not agree with the dissent that the judge's subsequent decision not to give a parole eligibility charge was "fundamentally unfair."

Appellant also contends the trial judge erred in refusing to allow voir dire of potential jurors on the issue of parole eligibility and what effect parole eligibility would have on the jurors' decision to impose a life or death sentence. We disagree. Since parole eligibility is not a relevant issue unless the defendant would be ineligible for parole, it was not an appropriate voir dire issue in this case. *See State v. Young, supra; State v. Torrence,* 305 S.C. 45, 406 S.E. (2d) 315 (1991) (Chandler, A.J., concurring); *see also State v. Matthews,* 296 S.C. 379, 373 S.E. (2d) 587 (1988), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1559, 103 L.Ed. (2d) 861 (1989).

### Pathologist's Testimony

During the guilt phase of appellant's trial, Dr. Joel Sexton, a pathologist, testified for the State. During direct examination, the solicitor asked Dr. Sexton, "How long did [the victim] live with two gunshot wounds to the head?" Appellant objected, stating, "This witness has no way of knowing that." The trial judge overruled the objection, and the pathologist answered,

"The person could have been immediately unconscious and died in a short time or could have lived a matter of hours." Appellant did not move to strike the answer or request any further relief at that time. However, appellant later renewed his objection, contending that Dr. Sexton's opinion was inadmissible because he could not state the time of death to a reasonable degree of medical certainty. At that time, the trial judge offered to give a curative instruction, but appellant declined. Appellant now asserts the admission of the pathologist's answer mandates reversal. We disagree.

Initially, this issue is procedurally barred because appellant declined the judge's offer of a curative instruction. Such an instruction ordinarily is deemed to have cured any error in the admission of testimony. *See e.g., State v. longworth*, 313 S.C. 360, 438 S.E. (2d) 219 (1993), *cert. denied,* — U.S. —, 115 S.Ct. 105, 130 L.Ed. (2d) 53 (1994). In any event, appellant cannot demonstrate prejudice here. Error without prejudice does not warrant reversal. *State v. Wyatt,* 317 S.C. 370, 453 S.E. (2d) 890 (1995). The evidence of appellant's guilt was overwhelming. His only defense in the guilt phase was that he "accidently" shot the victim, recocked the gun out of habit, then "mistakenly" shot the victim a second time. Any speculative evidence about the victim's possible suffering did not contribute to the guilty verdict.

### Aggravating Circumstances

The following aggravating circumstances were submitted to the jury during the penalty phase: (1) robbery while armed with a deadly weapon; and (2) larceny with a deadly weapon. Appellant contends that since both circumstances arose from the same act, the submission of both to the jury violated his due process rights. We disagree.

Although we have not considered this argument before in the context of a due process claim, we have rejected this argument in the context of an Eighth Amendment challenge. *See state v. Elkins,* 312 S.C. 541, 436 S.E. (2d) 178 (1993), *cert. denied,* — U.S. —, 114 S.Ct. 1634, 128 L.Ed. (2d) 357 (1994). Here, appellant failed to specify at trial which constitutional provision he based his argument upon. Consequently, this issue is procedurally barred. *State v. Holmes, supra; State v. Williams, supra.* In any event, sufficient evidence was presented during the penalty phase which would

support the factual conclusion that the aggravating circumstances arose from two different acts.[3] Consequently, we find no error in the submission of both aggravating circumstances to the jury.

### Demonstration of Weapon

It is undisputed that appellant shot the convenience store clerk and that his accomplice Scott shot and killed their second victim a week later. During the penalty phase, appellant sought to require Scott to demonstrate how he held the gun while shooting the second victim. The trial judge sustained the solicitor's relevancy objection, a ruling appellant contends constitutes reversible error. We disagree.

Whether evidence is relevant or whether it should be admitted in a criminal prosecution are issues within the trial judge's discretion. *State v. Wyatt, supra.* Evidence is relevant if it tends to make more or less probable a fact in issue. *Id.* Appellant argues a demonstration of Scott's shooting technique would have been relevant to show that appellant acted under Scott's dominion or under duress in shooting the convenience store clerk, and that appellant was merely a minor accomplice in the first killing. We see neither relevancy, nor an abuse of discretion in the exclusion of this evidence.

### Charge on Deterrence

In discussing jury charges during the penalty phase, appellant requested a charge on general deterrence. However, appellant agreed to forego such a charge after the solicitor agreed not to argue deterrence during closing argument. Despite this agreement, the solicitor argued, "The man will continue to kill, ladies and gentlemen. There's no question. I don't think I have seen anything from that man that says, true,

---

[3] Appellant testified he was armed with a gun he had brought to the scene. While the victim was still alive with appellant holding the gun on him, Scott stole a gun from the cash register. This act constituted robbery, that is, "the felonious or unlawful taking of money, goods or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear." *State v. Bland,* — S.C. —, 457 S.E. (2d) 611 (1995). Appellant then shot and killed the victim, and he and Scott took the money and the cigarettes. This theft constituted larceny, that is, "the felonious taking of the goods of another without the consent of the other . . . [with] an intent to permanently deprive the owner of possession." *Kerrigan v. State,* 304 S.C. 561, 406 S.E. (2d) 160 (1991).

heart and soul remorse of anything." Appellant did not object to this argument, but after the trial judge charged the jury, appellant renewed his request for a charge on deterrence. The judge declined. Appellant contends this was error. We disagree.

We discern neither prejudice nor error in the refusal to give a charge on deterrence. First, there was no prejudice because the requested charge went to the issue of general deterrence while the solicitor's argument went to specific deterrence. Second, this Court has indicated that a charge on general deterrence is appropriate only when the solicitor argues it. *See, e.g., State v. Longworth, supra.* She did not do so here, and thus no charge was required.

### Proportionality Review

After reviewing the entire record, we are convinced the death sentence in appellant's case was not the result of passion, prejudice, or any arbitrary factor. In addition, the jury's finding of aggravating circumstances is supported by the evidence. *See* S.C. Code Ann. § 16-3-25 (1985). Further, we hold the death penalty here is not excessive or disproportionate to the penalty imposed in similar capital cases. *See State v. Sims,* 304 S.C. 409, 405 S.E. (2d) 377 (1991), *cert. denied,* 502 U.S. 1103, 112 S.Ct. 1193, 117 L.Ed. (2d) 434 (1992); *State v. Thompson,* 278 S.C. 1, 292 S.E. (2d) 581, *cert. denied,* 456 U.S. 938, 102 S.Ct. 1996, 72 L.Ed. (2d) 458 (1982), *overruled on other grounds, State v. Torrence, supra* (abolishing *in favorem vitae* review). We therefore affirm appellant's convictions and sentence.

Affirmed.

TOAL, MOORE and WALLER, JJ., concur.

FINNEY, C.J., dissents in separate opinion.

FINNEY, Chief Justice, dissenting:

I respectfully dissent. The trial judge initially granted appellant's request to charge the jury in the penalty phase that appellant would not be eligible for parole for thirty years if the jury found an aggravating circumstance and recommended a life sentence. This initial ruling was made prior to jury voir dire, and profoundly influenced that process, the se-

lection of jurors, and the presentation of the guilt phase evidence. It was not until after the jury had returned the guilty verdicts that appellant's attorneys learned the judge had changed his mind and decided not to give the charge. Whether or not the initial ruling was the proper one, it is fundamentally unfair to change the ground rules in mid-trial. *Butler v. State,* 302 S.C. 466, 397 S.E. (2d) 87 (1990). In my opinion, the circumstances of this case require that appellant be granted a new trial.

Further, in my opinion, appellant's Eighth Amendment rights were violated when the judge refused to charge the jury on appellant's parole eligibility after the issue was explored on voir dire. *See State v. Young,* — S.C. —, 459 S.E. (2d) 84 (1995) (Finney, A.J., dissenting). This error alone mandates a new sentencing proceeding.

For the foregoing reasons, I respectfully dissent.